Thank you, Your Honor. May it please the Court, good morning. My name is Mark Sellers. I represent the plaintiff appellant in this case, Tualatin Valley Builders Supply, Inc. I represented the plaintiff at the trial court level as well in the district court for the District of Oregon. I'd like to reserve five minutes for rebuttal, if that's You may do so. Just watch the clock. Thank you, Your Honor. We're not expecting that this case may necessarily take the full 20 minutes, but that's fine. Why don't you proceed? I understand, Your Honor. Thank you. At the trial court level, Your Honors, the issue was decided on cross-motions for summary judgment. The issue of the amount of the tax claimed by the taxpayer on the carryback is not before this Court. That was bifurcated before the trial court. And if this case is remanded, it will be the subject of that remand discussion. The sole issue presented at the trial court level was the timeliness of the taxpayer's claim for refund for a carryback of a net operating loss from 2001 to 1996. We understand, counsel. Let's get to the heart of the matter. The question really is whether Revproc 2002-40 is valid either under an express delegation or whether it is entirely within Chevron. You might want to get right to the heart of that. The trial court found, Your Honor, that the – that in delegating the authority to determine the manner of making the election, that the Congress had also delegated the authority to determine the timing of the making of the election. Now, let's remember that the election that we're talking about here is not an election to use the net operating loss carryback. The net operating loss carryback is automatic and it is mandatory and it was changed by the 2002 Act in the wake of 9-11 to afford a special benefit for taxpayers having tax years ending in 2001 and 2002. Well, if you make a reason – let's say that your proposal of how it should be interpreted is a reasonable argument, but still, I think, what's your best argument that this Court should not give any either Skidmore or Chevron deference to what the IRS has done? Thank you, Your Honor. The Internal Revenue Bulletin is quite clear that revenue procedures and revenue rulings may be repealed or revoked at the discretion of the Commissioner of the Internal Revenue Service. But that's not an issue here, is it? There was never – it was always in effect within – so far as the applicable time is concerned. That is correct, Your Honor. It was not repealed or revoked. However, at the time that Congress enacted the 2004 Act, the revenue procedure was in place. When Congress enacted the 2004 Act, it specifically did not include any discussion of claims for refund under Section 6511. Section 6511 is mentioned once and only once. It's Congress was well aware of the Internal Revenue Service's position on the issue at the time that the 2004 Act was enacted, and it specifically took no action. The reason for that, Your Honors, is the fact that there was no need to take any action. Section 6511 carries its own 3-year statute of limitations. At the time of the enactment of the revenue procedure, the adoption of the revenue procedure, there were no taxpayers that had any tax years that were in danger of expiration under Section 6511. Because of the timing of the adoption of the revenue procedure, the Congress adopted some of the concerns expressed by the Internal Revenue Service with respect to those taxpayers who wished to either waive an election previously made, which is not Tualatin Valley Builders' Supply, or make an election that was not previously available under the prior law. Tualatin Valley Builders' Supply never made any election. What's more, the timing for making the elections is specifically stated in the waiver statute. Well, I thought it made an election in the 2001 return. It did not, Your Honor. What happened then? All that happened, Your Honor, under the applicable provision of the Internal Revenue Code is there is a mandatory 2-year carryback under Section 172A and under the Treasury Regulations 172-4. So under the new statute, there was an opportunity to make a different choice if you wanted to, but there were some time limitations attached to notifying the government of that choice. And I think the argument of yours that I have the most difficulty with is the statement or the argument that somehow this actually repeals the statute of limitations or is inconsistent with it. Because had you to make this election, you still would have had the full three years to file the amended return. So I'm not really sure why they're inconsistent. Your Honor, there is no requirement under the law that we make any election. Tualatin Valley never intended to make an election under the law prior to or after the adoption of any of the legislation or the revenue procedure. The election is a negative. It's an election out of the automatic carryback. Tualatin Valley Builders' Supply wanted the automatic carryback, and there's no requirement or necessity or even purpose for an election under that set of circumstances. Well, the rule has changed. Yes. And for those taxpayers in the situation that your client was in, I guess I just don't understand why it isn't reasonable for the government to want to know what you plan to do. That's really how I see this whole thing, is them saying, okay, you're in this unusual situation. Let us know, basically, what you want to do. Yes, Your Honor, that is correct. And the mechanism for letting the government know what they're going to do, whether it's a two-year carryback prior to the amendment or five years afterwards, it was already in the law and it was not changed. But see, that assumes the answer to the question. I mean, you're saying the only possible lawful way for the government to want that information was the way that already existed. And I guess I just don't understand the legislation to preclude this additional process. It's because, Your Honor, the filing of the claim for refund is not the making of an election. The law is mandatory. The law carries back to the prior year under 172A. And a statute of limitations, the three-year statute of limitations for claiming it, commences at the point that you file the return for the lost year. Now, if you don't go back and claim that loss, it is still consumed. It is no longer available for carryforward. Now, you filed a Form 1139 with the 2001 return, electing the quick refund in which you assert these rights pre-2002 statute. Is that filing irrelevant to anything in this case? It's not irrelevant, Your Honor, but it's not an election. It's an accounting mechanism. The Internal Revenue Service does not bear the burden or the responsibility for detecting when a net operating loss may be available to the taxpayer. The law provides that the net operating loss is carried back. Now, if the result of the net operating loss being carried back is that it may result in a refund of an overpayment for a prior tax year, then the taxpayer files either an application for refund or a claim for refund. However, if the taxpayer doesn't file the application or the claim, the loss is nonetheless carried back under the statute, and the taxpayer may leave the refund on the table. It's up to the taxpayer. But there is no elective effect to the filing of the application or the claim. The only election is to waive the automatic statutory treatment for the carryback. And in that case, instead of you don't waive part of the carryback and only carryback one year or whatever, you waive the entire  And by default, under the 174-4 regulations and the 172, I'm sorry, 172-4 and 172A, it goes forward, and it goes forward 20 years. So the only election is to say, I don't have any use for that. I'd rather carry it forward. Other than that, the taxpayer is required to comply in the same fashion after the statute was passed as prior to that time. Is there anything in the record that would suggest that the plaintiff could not have given notice prior to October 31, 2002? No, Your Honor. I don't believe there is. The only thing is that the revenue procedure, of course, is published in the Internal Revenue Bulletin. It was published approximately six months prior to the expiration of its deadline. And the taxpayer, at the time that the revenue procedure was published, was, as all taxpayers are held to be, cognizant of the filing deadlines under other applicable provisions of the Internal Revenue Code, including Section 6511. Section 6511 has a particular provision in Subsection D2B, which says that if the claim for refund is prevented by any law or rule of law, any other law or rule of law, it is nonetheless allowable, or it may be allowed. And we're not getting to the substance of the mathematical calculation, but it is timely under that statute. If it is filed within the three-year statute of limitations provided by 6511. Well, we'll hear from the government in just a moment, but I assume what they're going to tell us is that, in effect, the 2002 Act was a limitation on 6511, or a modification with respect to 6511, to the extent that it applies to this very, very narrow matter and delegates to the service the manner in which this 2002 change will be carried out. The service may tell the Court that, Your Honor, but that would not be an accurate statement of law. Section 6511 is not mentioned in the 2002 Act. The only thing the 2002 Act did was to automatically extend the statute from the carryback period from two years to five years, which is the only statutory revision that applies to total Silicon Valley builder supply. And then it said that, wait a minute, we have a new five-year election period here, so if you want to waive that five-year election period, here is what you do. It said nothing regarding the statute of limitations for filing a claim for refund. I think we understand your argument. Counsel, maybe we ought to hear from the government. You still have all of your remaining time, if you'd like to keep it. Thank you, Your Honor. Pincus. May it please the Court, my name is David Pincus. I'm representing the United States. I think it helps to keep two separate matters separate. The time limits for the carryback, or that is the periods of the carryback, in 6511, which we don't think really plays a role in this case, under Section 172B3 and under Section 172J, there are elections to be made to determine the number of years of the carryback. Those two elections, one of them entitles the taxpayer to waive any carryback period, a zero carryback. The other is the two versus five that's more directly at issue here. Those have very strict time limits. They are not the usual 6511 of three years after the return for the loss year. They are when the return itself was due, which in Tuolumne's case was 12-15-2001. First the Internal Revenue Service and then ratification by Congress extended that, but only until October 31, 2002. The congressional legislation refers to it as before November 1, 2002, but that's the same as up to October 31, 2002. So by that date, the IRS was entitled to know whether the taxpayer was going for no carryback, a two-year carryback, or a five-year carryback. Well, what about Mr. Seller's argument that that's all covered by 6511, that there's an effect unless one expressly amends 6511, the Congress can't tinker or the service can't tinker with this area? Well, we would submit that 6511 is the general procedural statute of limitations in general. For example, if Tuolumne said we, in fact, had a larger loss than we originally claimed for 2002, we'd like to file a refund claim carrying back a larger amount, not switching the year to which we were carrying it back, because we submit that that's already settled by 172. But we want to increase it because we now think we have a larger loss in 2002. Is that 2001, rather? They could do that any time up until three years after the due date of return for the loss year, which is 2001. So they could do that any time up until 2004. But that's not affected by 172. That's well, there are two different things. 172 is built into the statute, and that has an expressed, specific, and more limited date by which a taxpayer must make an election. Was I correct or incorrect in trying to reconcile those in this kind of situation? In other words, had this taxpayer notified the government that it intended to change 2 to 5 or 5 to 2, I forget now, which direction, within the proper timeframe, would it still have had the opportunity to then go ahead and file the amended return after that within the three years? Yes. As long as it had notified the government by October 31st that it wanted the five years. So it didn't actually alter the filing requirement, the three years to file the refund. It was just a way of saying, okay, let the government know, and then you still have your three years to file. That's right. Now, there's a little confusion that was caused by the fact that the method the IRS used was either a new to indicate whether you preferred the 5 or the 2 was either a refund claim or a new application for tentative carryback adjustment. But the taxpayer, as long as he had filed either of those indicating five years by October 31st, could then still afterwards have filed another amended refund claim for whatever purpose he wanted, as long as the three years. But the form, the application could have been used instead of the refund claim. So even just reading it literally, you didn't have to file the refund claim within. You could have filed a new. In fact, it would have been expected that someone in Tuolumne's situation would have preferred the so-called quickie refund procedure. You get your money a lot quicker. That's what you did. Isn't that in connection with 2001? They originally did for the two years. But when Congress, excuse me, when the service issued the RevProc, their assumption was probably that a taxpayer in Tuolumne's situation, if they really wanted the five years, what they would do is not file a refund claim, but file another amended application for tentative carryback because they get the money sooner. So you would agree with Mr. Sellers to the extent that the filing of the 1139 is not particularly relevant to this issue? Their prior filing? It is relevant in the sense that the service, in deciding how to work this new RevProc and trying to – the service kind of had an administrative problem in view of the belated legislation. And they all reasonably decided to extend the period until October 31st. These periods would have expired. Two of them would have expired when the prior – when the return was due in December, the prior December. The quick refund would have expired in Tuolumne's case March 22nd. They would have had a few days. Congress, the service extended the period, but then they had an administrative problem. They had to know what everyone wanted to do. Well, why do you need to know if they still have the time to file it? Why do you really need to know? Well, it's the same reason that – Because they still have all the same time, right? Well, no, under the 172b3 and 172j made the time limits earlier. When the claim – it's not when the three-year period when the refund claim ordinarily would be due. These are special, more restricted time limits that were when the return itself is due, not three years from the return, but the return. They had already expired. And – but nevertheless, the taxpayers got this extension until October 31st. But for the same reason that Congress has this restricted period in the first place, it makes a mess when the service doesn't know whether a taxpayer is claiming no carryback, is claiming a two-year carryback, is claiming a five-year carryback. It keeps all those years open. It messes up future years because it affects if there's carryback losses left over. They are carried forward up to 20 years. So that's why Congress is very restricted in terms of the service needs to know, and there's this earlier limitation that's in the statute, in 172b3 and 172j, any time the number of years of the carryback is involved, there's a more limited period of time for the taxpayer to make an election. And the service needs to know for administrative reasons. Are you relying upon express language in 172j? I'm looking at it right now. Yes. And a taxpayer who is entitled to a five-year carryback may elect to have a carryback period computed without regard to B1H. Now, is that 5 v. 2? That's right. That means, without regard, means they may elect to have the two-year instead of the five-year in such manner as may be prescribed by the Secretary. Are you arguing in effect that that, to the extent at least that the taxpayer argues that 6511 is the fundamental statute on timing, that this might be an implied modification of 6511? Well, we think in general there have been a lot of 172b3 has been in the Code for a period, whether you're entitled to, if you want to waive the carryback period entirely. That election has always been there. I've never seen any argument that 6511, the general three-year period, takes priority over the very specific period in 172 that prescribes the carryback period. I don't think the general refund claim period was ever considered to sort of supersede or preempt what taxpayers are entitled to on the merits provisions. Otherwise, for example, I think Mr. Sellers is, in effect, with the first words out of his mouth, that this is a timing issue. But the timing here is built into 172. For example, to the extent he argues that 6511 is the controlling timing mechanism, then what? Well, we have several arguments, I'd say. One is the more specific takes priority over the more general. 172 is dealing with these very special election provisions. 6511 deals with everything in the Internal Revenue Code. Another thing is 6511 is really a statute of limitations provision. It's assuming that there is an overpayment. And I would submit that there is no overpayment for the earlier year here if on the merits the taxpayer is not entitled to a five-year carryback. With respect, this is also under 6511. There's some language in there about notwithstanding any other provision. But that was intended to deal specifically with an earlier year having been closed under the theory of res judicata because the tax court or perhaps another court had considered it. That deals with barred years or years that might be barred by some principle of law such as res judicata. It's not intended, there's no indication any place that it's, in theory, it could, the way Mr. Sellers reads it, it takes priority over every provision in the Internal Revenue Code. For example, banks were allowed a 10-year carryback. Under Mr. Sellers' theory, any taxpayer who within three years of the loss year claims something 10 years back and says, but look, 6511 gives me priority. So what difference does it make that the substantive statute says that this is limited to banks? I see the language saying notwithstanding any other provision. So I'm entitled to a 10-year carryback. Or to bring it even more specifically to the facts of, closer to this case, 172b3, which has been in the Code for a long time, allows for a waiver of any carryback at all. But it says that if you do it, it's, or don't do it either way, it's an irrevocable decision. So a taxpayer who decided to waive any right to a carryback under 172b3 would, you know, not be entitled to any carryback. Under Mr. Sellers' theory, if, as long as the taxpayer comes in within three years of the loss year, he could point to 6511d2b and say, the provision that says it's irrevocable, I'm going to override that provision. I can now, as long as I'm within three years of the loss date, it says notwithstanding any other provision, I don't like that provision that says it's my decision to waive any right to any carryback is irrevocable. I'm going to use 6511d2b to override that provision of 172b3. It doesn't work that way. That exceeds the purpose. With respect to Revproc 2002-40, what is your principal argument, that it was expressly contemplated or at least permitted by 172j, or are you relying on a Chevron or even a Skidmore power? Well, we'd – I think even though it's not a tax case, we'd point to this Court's decision in Schutz involving a HUD document that was not – it was a policy statement. There was no notice and comment there. But it was a – it published officially. It was in the Federal Register. In our case, this is published officially in the – in the Internal Revenue Bulletin, which I might point out is the authoritative – it's listed in every issue. It's the authoritative publication of the Internal Revenue Service. A revenue procedure is an official pronouncement. It – and, yes, we are referring – we are relying on the specific delegation in this case, which talks about in the manner prescribed by the Secretary. Are you entitled to Chevron or Skidmore deference, or does it matter? Well, frankly, ultimately, I – I don't think it matters too much. We would prefer Chevron. We think undershoots. We would argue for Chevron deference. But I think the Court will either think that what the service did was – was eminently reasonable or will think it was totally out for lunch. So I don't think that the precise dividing lines will do it. One other thing in this case which is somewhat unusual, Congress, two years later, adopted legislation along these lines. And the conference committee report does have a footnote citing in particular this – this revenue procedure. Anything further, counsel? Just one. If I have one minute, I just wanted to mention something in the other side of the brief that we disagree with. There's – on page 13 of the reply brief, there's a citation to a revenue procedure. There's a quote about – What page of the brief? Page 13 of the reply brief. It's picked up again on page 14 of the reply brief. If you look at that particular revenue procedure, which is actually getting pretty old anyway, but that revenue procedure draws a distinction between rulings with a small R, which are what we now refer to as private letter rulings. And that's what the quotation that the appellant has relates to. And revenue rulings with two large Rs, which are dealt with two pages later on page 554, and they say with – in terms of retroactive repealers, that revenue rulings published in the Internal Revenue Bulletin ordinarily are not revoked or modified retroactively. That's at page 554 of that particular – particular ruling. The Court has no further questions, so rest on the brief. Thank you, counsel. Mr. Sellers, you have some reserved time. Thank you, Your Honor. I want to be clear. We are not – the taxpayer here is not saying that we balance the deadlines of 6511 versus the deadlines in 172. 6511 is essentially antithetical to the 172 elections. The section 172 elections have a separate statutory deadline, and what the taxpayer is saying by filing that election is, Internal Revenue Service, I do not want to file under 6511. I am waiving my right to file under 6511. Unless and until the taxpayer either waives the five-year carryback in these mandatorily and automatically upon the taxpayer. The taxpayer then has the right to choose, and there are some procedural distinctions between the application for tentative refund or the claim for refund procedure. If the taxpayer files the election under either of the waiver provisions, they're waiving 6511. They are not going to file the claim for refund. They are notifying the Internal Revenue Service, we're not going back in time, we're only going to go forward in time. So there's no need for balancing the time periods or whether 6511 preempts those. We look at those as being mutually exclusive, and I think that that's the way the statutes clearly read and the way that the statutes can be clearly applied. Now, the government is the one that changed the carryback period from two years to five years. The government claims that Revenue Procedure 2002-40 is reasonable because of administrative concerns involving confusion and a right to know what the taxpayer plans and intends to do. What the taxpayer plans and intends to do is automatically, unless an election is filed to the contrary, to carry it back five years under the revision to the statute in the 2002 Act. The government already knows what the taxpayer is going to do. The government knows that the taxpayer is required to carry that back unless and until a contrary election is filed. At the point where 2000- Was your client required as a matter of law to change from two to five? As a matter of law, the statute provides that five should be. So they had to change their already filed tax return? They had to file a new tax return? Yes, Your Honor. That is mandatory, and that is what they did. Not only did they have to file a new tax return to correct the prior filing, because they're on a fiscal year here, and the fiscal year didn't jive with the date of adoption of the 2002 Act. They were required, since the law provides that for all tax years ending in 2001 and 2002, including Tualatin Valley Builders Supply tax year ending in March of 2001, two shall be changed to five. They were required to file an amendment to come into law. Effectively, they filed under the old law, and the old law changed retroactively. So they did what they were required to do. They filed a claim for refund in the form of an amended return for 2006 to adopt the treatment of the current law, and they amended the 1999 two-year carryback return that they had already filed. And the reason for that is because to not do so might have affected a double dip. They were required to do so, and they did so. They filed no contrary election, and nowhere does the statute say for purposes of administrative convenience or the Internal Revenue Service's right to know what is coming down the road, nowhere does it say that the taxpayer's right to file a claim for refund under the claim for refund statute is somehow abrogated or the time period shortened. The only place in the record that that admonition or that rule shortening the time for filing the claim for refund is even mentioned is in the revenue procedure. It is not mentioned even in the purported letter that the Internal Revenue Service wrote to itself. They do not mention section 6511. They do not mention the claim for refund statute. The treatment was automatic. It was mandatory. And the government has no contrary explanation for the fact that the statute provides that 2 shall be changed to 5 for all of these tax years for all of these taxpayers. There was, when we talk about the extension of the time period that the government granted for taxpayers that wanted to file applications for tentative refunds under section 6411, yes, indeed, for some taxpayers, the time for filing an application for tentative refund had already expired. So the government did, in the revenue procedure, extend the filing deadline for those taxpayers. For the same reasons that we cite in our briefs, we don't think that was effective as a matter of law. 6411 already carries its own statutory provision. You're not contending that because of your fiscal year that somehow or other you were deprived of notice or never given an opportunity to comply with the revenue procedure, are you? No, Your Honor, we're not. Now, the 6411 taxpayers were granted an extension. What the government cannot explain is, what the government says is before and after the adoption of the statute, the taxpayer had the 6511 mechanism available to them as a matter of law. However, after the enactment of the revenue procedure, the taxpayer's statutory term for invoking that statutory procedure was shortened by a period of almost 2 years by the revenue procedure under a delegation of authority to determine the manner in which an election that was not made was to be made. And they also say that determining the manner includes a determination of determining the timing of the making of the election that was not made. The timing of the election is specifically stated in the statute. It's by the due date, including the return, including extensions for the filing of the tax return. Congress clearly knew the difference between the manner and the timing. With respect to our argument under the any other rule of law under 6511 D2B, the government claims that that has to do with res judicata. That's not expressed in the statute. They cite one case in which that was an example suggested by a court. However, if we look down in the same statute under D2B subpart 3, we find specific reference to res judicata in terms of prior determinations of any court with regarding to the amount of a tax, including the United States Tax Court. And it says that even though the tax loss for the carryback here may have already been determined, that shall not affect the availability of the carryback as a matter of res judicata. This demonstrates that when Congress wanted to talk specifically about res judicata in that statute, it knew how to do it. 65D2B1 is not the statute talking about res judicata. And subpart 3 is not at issue in this case. We contend, based upon the statute and based upon the case law, that there is no actual or imputed limitation of the application of the statute to prior determinations of a court having deficiency or refund jurisdiction. That is not our case. Our case is that we are allowed to have the three-year statute under A and B, and that those are not in conflict with the elections and the deadlines for the elections that we never made. Finally, Your Honors, we don't quarrel with the fact that administratively carrybacks may be an administrative hassle for the Internal Revenue Service, but taxpayers file carryback claims all the time. We do not contend, contrary to the government's assertions, that we would say that the three-year statute of limitations in 6511 preempts some other specific refund that we haven't even contended with under special provision of law. We do say that 6511 and 172, the elections, are apples and oranges. The trial court determined in this case that the delegation of authority to determine the manner of making an election also included its timing. There is absolutely no way that we can see under the statute that the timing is not specifically stated in the statute and beyond the delegation of authority to the Internal Revenue Service, and for that reason, we respectfully request that you reverse and remand this back to the trial court for further determination. Thank you all very much. Thank you, Mr. Sellers. The case just argued will be submitted for decision, and we will proceed to two cases which have exactly the same name but are entirely distinct. The first case that we will hear of the two is Forest Service Employees v. the Forest Service, 05-36103, which is the timber sale contract case as opposed to the FOIA case. Counsel?
judges: O'scannlain, Graber, Callahan